IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HENRY C. WILLIAMS, III,

    Petitioner,                    Case No. 2:06-cv-01666 ALA (HC)

    vs.

MIKE KNOWLES, et al.,           <u>ORDER</u>

    Respondents.[1]

_____/

    Henry C. Williams, III, proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a) on July 31, 2006. Mr. Williams alleges several violations of his federal constitutional rights in connection with a disciplinary hearing concerning a charged rule violation at the California Medical Facility where he is currently incarcerated.

    Respondent filed a response to Mr. William's petition on October 5, 2006. (Doc. No. 10). Petitioner's traverse was filed November 7, 2006 (Doc. No. 13). Counsel was appointed on May 30, 2008. (Doc. No. 24).

    On January 17, 2008, Petitioner filed a motion to suppress the inclusion of this pending litigation as information for consideration of suitability at Petitioner's upcoming parole hearing.

---

[1] Mike Knowles is substituted for his predecessor, Martin Veal, as the warden where the prisoner is incarcerated, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

1

(Doc. No. 19). On May 23, 2008, this Court ordered Respondent to file a response to Petitioner's motion. (Doc. No. 23). The response was filed on June 11, 2008. (Doc. No. 27). Petitioner filed a reply on July 21, 2008. Respondent filed a sur-reply on August 1, 2008. (Doc. Nos. 32 and 35). Petitioner's parole hearing is scheduled to take place on August 7, 2008 at 3:30 p.m. (Doc. No. 33, Exh. 1).

For the reasons discussed below, Mr. William's petition is DENIED. For this reason, the Court will also DENY Petitioner's motion to suppress.

# I

## A

Petitioner is currently serving an indeterminate state prison sentence of 15 years to life at the California Medical Facility, based upon his conviction, in 1998, of second degree murder. Mr. Williams alleges in his petition that he was denied his right to due process under the Fifth and Fourteenth Amendments in connection with a disciplinary action in which he was found guilty of theft in violation of CCR Title 15 § 3012.

## B

At a disciplinary hearing on January 27, 2005, Petitioner, who was assigned to work at the "Main Yard Canteen Shack," was found guilty of possessing $18.00 worth of contraband canteen ducats and violating canteen procedures by making deliveries of canteen items to inmates on the yard for a profit. (Doc. No. 10, Exh. A).

## C

Petitioner appealed the disciplinary board's findings and received First, Second and Director's Level review of the decision. The First Level Appeal Response denied Petitioner's appeal on February 13, 2005. The Second Level Appeal Response denied Petitioner's appeal on May 12, 2005. On September 12, 2005, a Director's Level Appeal Decision also denied Petitioner's appeal. *Id*.

////

**D**

Petitioner filed a petition for a writ of habeas corpus in the Solano County Superior Court which was denied on December 19, 2005. The state trial court issued a written decision denying the petition on the ground that Petitioner had failed to establish a prima facie case for relief "because the record indicates that the decision by the prison disciplinary board had some basis in fact and therefore [was] not arbitrary and capricious." (Doc. No. 10, Exh. E).

**E**

Petitioner filed a second original petition for habeas corpus relief in the California Court of Appeal, First Appellate District, which was summarily denied on March 22, 2006.

**F**

On May 31, 2006, Petitioner filed a third petition with the California Supreme Court. That petition was denied without comment on June 28, 2006. Petitioner has exhausted his state remedies.

**II**

Petitioner filed the pending application for a writ of habeas corpus pursuant to § 2254(a) in this Court on July 31, 2006. (Doc. No. 1). Mr. Williams contends that federal constitutional errors in the disciplinary proceeding held on January 27, 2005, in connection with a charged rule violation, compel the setting aside or expungement from his record of the resulting disciplinary sanction imposed against him. Mr. Williams alleges that he was denied his rights to due process and equal protection because 1) he was falsely accused of theft by a prison official acting under color of law and 2) the state courts ignored "clear evidence" of Petitioner's innocence. (Doc. No. 1).

In addition to being found guilty of theft, Mr. Williams was removed from his canteen work assignment and assessed a forfeiture of 30 days of behavioral credit, the latter of which Respondent contends was later restored to him. (Doc. No. 35). Mr. Williams is concerned that the rule violation will negatively impact his upcoming suitability hearing before the parole board

and has made a motion to suppress the disciplinary decision pending the resolution of this matter.

### A

In analyzing these contentions, this Court must comply with the restrictions Congress has placed on the authority of federal courts in reviewing applications for habeas corpus relief filed pursuant to § 2254(a). "Principles of comity and federalism counsel against substituting our judgment for that of the state courts, a deference that is embodied in the requirements of the federal habeas statute, as amended by AEDPA." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. Cal. 2004). Federal habeas corpus relief is thus not available to state prisoners for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court in the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). With respect to a state court's factual findings, AEDPA provides, under § 2254(e)(1) that "a determination of a factual issue made by a State court shall be presumed to be correct," and that this presumption of correctness may be rebutted only by "clear and convincing evidence." Where the state court misapprehends or misstates the record in making its findings, the resulting factual finding are only rendered "unreasonable" if the misapprehension goes to a material factual issue that is central to a petitioner's claim. *Taylor*, 366 F.3d at 1001. The court in *Taylor* explained

> To fatally undermine the state fact-finding process, and render the resulting finding unreasonable, the overlooked or ignored evidence must be highly probative and central to petitioner's claim. In other words, the evidence in question must be sufficient to support petitioner's claim when considered in the context of the full record bearing on the issue presented in the habeas petition.

*Id*.

////

**B**

As stated above, the Solano County Superior Court issued a written decision denying Mr. Williams' petition on the merits on the ground that "the decision by the prison disciplinary board had some basis in fact and therefore [was] not arbitrary and capricious." (Doc. No. 10, Exh. E). The California Court of Appeal and the California Supreme Court rejected the federal constitutional claims alleged by Petitioner in his state habeas corpus petitions without comment. Accordingly, we "must look" through the Courts of Appeal's denials to the last reasoned decision by a state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

In its written decision, the Solano County Superior Court found as follows

> Prison authorities obtained information that inmates assigned to work at the "Main Yard Canteen Shack" would take items from the canteen and deliver them to other inmates under the pretense of returning goods to the canteen. On December 20, 2004, Officer Leali observed Petitioner receiving a brown paper bag from Inmate Evans and leaving the main yard. The officer followed Petitioner and saw him pass the bag to another inmate. Officer Leali confiscated the bag, noted that it was marked with the word "return," and questioned the inmate. The inmate asserted that he had purchased the items in the bag from the canteen. The canteen manager determined that the items in the bag (three bags of potato chips, one bag of nacho flavored tortilla chips, and one box of individually wrapped cupcakes) were not purchased by that inmate and the items did not need to be returned. At the end of the day, Petitioner and Inmate Evans were searched. Petitioner was found to have $18.00 worth of yard ducats with different sequence numbers. An inspection of the ducats revealed that they had belonged to and were purchased by different inmates. An inventory of the canteen revealed no missing items.
>
> Based on the results of the investigation, Petitioner was removed from his canteen work assignment and was charged with the rule violation of transferring stolen canteen items. A disciplinary hearing was conducted on January 27, 2005. Petitioner defended himself by asserting that he had bought the items with his own ducats and that the inventory of the canteen revealed no missing items. Nonetheless. the hearing officer determined that the eyewitness account by the reporting officer was more credible than Petitioner's statements or the lack of

5

inventory discrepancies. Petitioner was found guilty of the rule
violation and assessed 30 days loss of credit.

Doc. No. 10, Exh. E. Based upon this evidence, and citing the "some evidence" rule announced in *Superintendent v. Hill*, 472 U.S. 445 (1985), the state trial court denied the petition.[2]

The "some evidence" test announced in *Superintendent v. Hill*, 472 U.S. 445 (1985) is applicable to prison disciplinary proceedings. "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.'" *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 28 (9th Cir. 2006) (quoting *Hill*, 472 U.S. at 455-56). "*Hill*'s some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'" *Id.* at 1129 (quoting *Hill*, 472 U.S. at 457).

The evidence in the record indicates that the First Level Appeal Response issued by Associate Warden O'Ran on February 13, 2005, stated that Officer Leali was interviewed on February 5, 2005. Officer Leali stated that Mr. Williams asked for permission to exit the yard to take the used canteen ducats to the main canteen. (Doc. 10, Exh. A). He further stated that Mr. Williams was in possession of two bags, one with used ducats and the other contained personal clothing. *Id.* Officer Leali stated that he gave Mr. Williams permission to leave the yard and cleared him through Tower 7 and the West Sally Port. Officer Leali stated that Sergeant Hall observed someone pass an additional paper bag to Mr. Williams from the Yard Canteen. *Id.* Officer Leali indicated that he had no other involvement with the incident.

---

[2]Mr. Williams filed a motion for reconsideration of the court's order denying his petition wherein he raised the following arguments: 1) the incident the court relied upon involving Officer Leali never occurred; 2) there was no evidence that anything had been stolen from the canteen; and, 3) "Theft as defined by the CCR and Penal Code must be proven by empirical evidence, not by one Correctional Officer's conjecture." (Doc. No. 12, Exh. B). There is nothing in the record indicating that the state court responded to Mr. Williams' motion for reconsideration.

In the Rules Violation Report, dated January 20, 2005, Sergeant Hall stated that on January 8, 2005, he watched Mr. Williams approach Officer Leali with two paper bags. *Id*. Officer Leali searched the bags and Mr. Williams returned to the Inmate Canteen, where Mr. Williams was handed a large brown bag from Inmate Evans. Sergeant Hall followed Mr. Williams off the yard and noticed that the bag he had retrieved from the Inmate Canteen prior to leaving the yard had been passed to an inmate located in the Unit I Corridor, Inmate Lewis, and had the word "RETURN" written on it . The bag was confiscated and contained "three Moonlight Brand, barbecue style potato chips, [...] Cactus Annie's brand nacho flavored tortilla chips; one box of Mrs. Freshly's Fun Bakery Products brand creme filled chocolate cupcakes containing six individually wrapped cupcakes." *Id*.

Sergeant Hall stated that Mr. Williams was searched and yard ducats totaling $18.00, having several different sequence numbers, were confiscated. According to Sergeant Hall, Mr. Williams said that the ducats belonged to him, and that the items confiscated from Inmate Lewis were purchased by him. *Id*. Sergeant Hall's further investigation resulted in the discovery that the yard ducats confiscated from Mr. Williams showed "definitive erasure marks and penciled writing underneath the current writing," which indicates that they were purchased by inmates other than Mr. Williams. He further established that there was no record of any discrepancies in the accounting or inventory or canteen ducats used for purchasing canteen items completed by the Mail Canteen staff on January 3, 2005. *Id.*

The state court held that the evidence Petitioner provided concerning the absence of any missing inventory from the canteen was not enough to persuade the hearing officer who found the eyewitness account of the reporting officer to be more credible. It does appear that the state court, in its written decision, ascribed testimony to Officer Leali that was actually provided by Sergeant Hall. However, this misapprehension does not "go to a material factual issue that is central to petitioner's claims" and thus does not render the state court's findings "unreasonable" when considered in the context of the full record bearing on the issue presented in the habeas

petition which concerns alleged due process violations in Mr. Williams' disciplinary hearing. *Taylor*, 366 F.3d at 1001. Therefore, the state court's conclusion that there was sufficient evidence in the record to support the disciplinary board's decision under the "some evidence" test announced in *Superintendent v. Hill*, 472 U.S. 445 (1985) was not contrary to, and did not involve "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court in the United States." Nor did it result "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

### C

Petitioner alleges that his right to due process was violated at his January 27, 2005 disciplinary hearing because: (1) his request for witnesses was improperly denied by the hearing officer; and (2) he was falsely accused by the reporting officer.

It is well established that inmates subjected to disciplinary action are entitled to certain procedural protections under the Due Process Clause but are not entitled to the full panoply of rights afforded to criminal defendants. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Hill*, 472 U.S. at 455-56; *United States v. Segal*, 549 F.2d 1293, 1296-99 (9th Cir. 1977) (observing that prison disciplinary proceedings command the least amount of due process along the prosecution continuum). An inmate is entitled to advance written notice of the charge against him as well as a written statement of the evidence relied upon by prison officials and the reasons for any disciplinary action taken. *Wolff*, 418 U.S. at 563. In the disciplinary hearing context, an inmate does not have a right to counsel, retained or appointed, although illiterate inmates are entitled to assistance. *Id*. at 570.

An inmate has a right to a hearing at which he may "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. Should prison officials refuse to call a witness, they should explain their reasons in disciplinary proceedings or later in

court proceedings. *Id*. However, as a general rule, inmates "have no constitutional right to confront and cross-examine adverse witnesses" in prison disciplinary hearings. *Ponte v. Real*, 471 U.S. 491, 510 (U.S. 1985) (Marshall, J., dissenting).

The disciplinary hearing must be conducted by a person or body that is "sufficiently impartial to satisfy the Due Process Clause." *Wolff*, 418 U.S. at 571. As stated above, the decision rendered on a disciplinary charge must be supported by "some evidence" in the record. *Hill*, 472 U.S. at 455. A finding of guilt cannot be "without support" or "arbitrary." *Id*. at 457. The "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder. *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994) (citing *Hill*, 472 U.S. at 455-56 and *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987)).

Determining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. *Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir. 1986). Indeed, in examining the record, a court is not to make its own assessment of the credibility of witnesses or re-weigh the evidence. *Hill*, 472 U.S. at 455. The question is whether there is any reliable evidence in the record that could support the decision reached. *Toussaint*, 801 F.2d at 1105.

Where a protected liberty interest exists, the requirements imposed by the Due Process Clause are "dependent upon the particular situation being examined." *Hewitt v. Helms*, 459 U.S. 460, 472 (1983). The process due is such procedural protection as may be "necessary to ensure that the decision . . . is neither arbitrary nor erroneous." *Washington v. Harper*, 494 U.S. 210, 228 (1990). In identifying the safeguards required in the context of disciplinary proceedings, courts must remember "the legitimate institutional needs of assuring the safety of inmates and prisoners" and avoid "burdensome administrative requirements that might be susceptible to manipulation." *Hill*, 472 U.S. at 454-55. The requirements of due process in the prison context

involve a balancing of inmate rights and institutional security concerns, with a recognition that broad discretion must be accorded to prison officials. *Wolff*, 418 U.S. at 560-63.

This court concludes that Petitioner received all the process that was due to him in connection with the January 27, 2005 disciplinary hearing. Petitioner received advance written notice of the charge against him as well as a written statement of the evidence relied upon by prison officials and the reasons for the disciplinary action taken. *Wolff*, 418 U.S. at 563. Petitioner claims that he was not allowed to call any witnesses on his behalf. The Second Level Appeal Response indicates that this claim was investigated. Lieutenant Roszko, the senior hearing officer, was interviewed in conjunction with Petitioner's claim. He stated that Mr. Williams never requested witnesses during the hearing in question. The Second Level Appeal Response also noted that the "form, attachment 115-A, reflects no witnesses being requested at the time [Mr. Williams] was served his copy on January 21, 2005." (Doc. No. 10, Exh. A).

Petitioner was provided with a Staff Assistant, Officer Bliton, to assist him at the hearing. The assigned Staff Assistant met with Mr. Williams more than 24 hours prior to the hearing, explained the disciplinary procedures. He provided assistance and was present at the hearing. Officer Bliton was also interviewed in conjunction with Mr. Williams' Second Level Review. He stated that Mr. Williams "did not request witnesses at any time prior to or during the hearing." *Id*.

There was "some evidence" to support the decision rendered on the disciplinary charge, in the form of the rules violation report, the Petitioner's inability to explain where and how he obtained the confiscated items, and the testimony of Officer Leali and Sergeant Hall. This is true even though Petitioner's testimony, if believed, would have supported an acquittal on the disciplinary charge. There is no credible evidence that the decision maker was not impartial. Because there was sufficient evidence supporting the disciplinary board's decision, we do not address Petitioner's claim that he was "found guilty of theft solely because he exercised his right

1 to file a rights and responsibility complaint against Sgt. Hall for false allegations/falsifying documents." (Doc. No. 1).

Under the circumstances presented here, Petitioner's right to due process was not violated at the January 27, 2005 disciplinary hearing. The decision of the state courts to the same effect is not contrary to or an unreasonable application of the federal principles set forth above. Accordingly, petitioner is not entitled to relief on this claim.

Based on the foregoing it is therefore ORDERED that:

1. Petitioner's motion to suppress is DENIED.

2. The petition for writ of habeas corpus be DENIED; and

2. The clerk of the court shall notify Petitioner of this Order.

/////

DATED: August 6, 2008

                        /s/ Arthur L. Alarcón
                        UNITED STATES CIRCUIT JUDGE
                        Sitting by Designation